# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOMINIC NOVAK et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action 01-00039 (HHK)** |
| **CAPITAL MANAGEMENT AND DEVELOPMENT CORPORATION, et al.,** | |
| **Defendants.** | |
| **GEORGE D. VALDIVIA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action 01-00456 (HHK)** |
| **CAPITAL MANAGEMENT AND DEVELOPMENT CORPORATION, et al.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION

Plaintiffs Dominic Novak and George Valdivia, bring this action against defendants,

Capital Management and Development Corporation, Menage Limited Partnership, Zei, Inc.,

Capital Restaurant Concepts, Ltd., Power Station Limited Partnership, SJG Properties, Ricky

Waller and Michael Braxton (collectively "defendants") alleging that defendants were negligent

in failing to maintain proper security in the alley in which plaintiffs were assaulted.  Defendants

also bring cross-claims for indemnification and contribution against Minh Cong Ta, Minh Quang Ta, and Tuan Nguyen (collectively "cross-defendants"). Before the court is defendants' motion for summary judgment [*Novak* Dkt. #151], as well as cross-defendants' motion for summary judgment, joined by plaintiffs, on defendants' cross-claims for indemnification and contribution [*Novak* Dkt. #152, *Valdivia* Dkt. # 87]. Upon consideration of the motions, the respective oppositions thereto, and the record of this case, the court concludes that defendants' summary judgment motion must be granted, and that cross-defendants' motion for summary judgment must be denied as it is moot.

## I. BACKGROUND

The Zei Club is a large night club located near the intersection of 14th and I Streets in Northwest Washington, D.C. It is not actually on either street but, instead, is surrounded on all sides by alleys that lead to these streets. One alley, which the court dubs the "the I Street alley," is of particular importance in this case.[1]

At about midnight on March 22, 1998, plaintiffs Novak and Valdivia, along with Nicole Novak (Dominic's sister) and John Henderson, entered the Zei Club. They left the Zei Club sometime after 2:30 a.m, first attempting to leave through the front door. Zei Club security personnel informed the foursome that the front door was closed and that they would have to leave through the back door exit. They left the Zei Club through the back door, turned right, and

---

[1] The Zei Club's entrance/front door is on Zei Alley, which runs east-west and leads to 14th Street. The Zei Club's back door exit faces a second alley, which leads to 15th Street, north of and parallel to Zei Alley. The I Street alley runs north-south, connecting the Zei Club entrance and exits. One walking north on the I Street alley would reach I Street. Walking south, one would pass the Zei Club exit, then the Zei Club entrance, and stop at Zei Alley. *See* Pls.' Ex. 1.

headed south on the I Street alley.  In that alley, between the Zei Club's back door and front

door, the foursome encountered a group of about 12-15 Asian persons, mostly male, standing

along the wall opposite the Zei Club.  One person from the group exchanged words with

Henderson and then suddenly struck him in the back of the head.  Henderson rushed his attacker,

and then other Asian males from the group converged on Henderson.  In turn, Novak and

Valdivia rushed in to help Henderson.  In the ensuing melee, both Novak and Valdivia were

punched repeatedly by persons in the crowd.  The foursome ran south on the I Street alley

toward the Zei Club entrance and Zei Alley, but someone in the group of Asian persons tripped

Novak.  When Novak struggled to stand, someone hit him in the head with a wooden board,

twice.

     At some point, patrons leaving through the Zei Club back door alerted defendants

Michael Braxton and Ricky Waller, off-duty Metropolitan Police Department ("MPD") officers

working at the Zei Club, to the fight involving plaintiffs.  Braxton and Waller ran out the Zei

Club's rear exit, into the I Street alley, and saw Novak bloodied and about to be hit a third time

with the wooden board.  Braxton and Waller ended the attack, aided Novak, and arrested various

suspects.  Both Novak and Valdivia suffered severe and permanent injuries because of the attack.

Novak's injuries were more serious, including impairment of cognitive and emotional functions.

     In early 2001, plaintiffs filed complaints alleging negligence by defendants, all business

entities or employees in some way related to the Zei Club.  Specifically, plaintiffs claim that

cross-defendants, who attacked them in the I Street alley, had just been ejected from the Zei Club

around 2:30 a.m. for fighting in the club, and that defendants therefore breached their duty to

secure the alley by clearing it of belligerent patrons just ejected from the Zei Club.  Defendants

seek indemnification and/or contribution from cross-defendants, if they are found liable.[2]

## II. ANALYSIS

In the District of Columbia, which provides the relevant substantive law in the present

action,[3] in order to prove a prima facie case of negligence, a plaintiff must establish (1) a duty of

care owed by the defendant to plaintiff (2) which defendant breached (3) resulting in damage to

plaintiff (4) proximately caused by defendant's breach.  *Dist. of Columbia v. Beretta U.S.A.*

*Corp.*, 847 A.2d 1127, 1134 n.2 (D.C. 2004) (citing *Dist. of Columbia v. Harris*, 770 A.2d 82, 87

(D.C. 2001)).  Plaintiffs offer two discrete theories of negligence.[4]  First, defendants failed to

meet a general duty of care to protect plaintiffs from third party criminal activity.  Second,

defendants failed to meet a specific duty of care by failing to uphold their own security policies.

Defendants move for summary judgment[5] on several grounds:  First, that plaintiffs fail to

---

[2] In 2001, plaintiffs alleged that cross-defendants committed various intentional torts such as assault and battery.  Compl. at 14.  At plaintiffs' request, the court dismissed these claims against cross-defendants.  However, defendants' cross-claims for indemnification and contribution against cross-defendants survived.  *See* Mem. Op. of March 31, 2003 at 8.  The court dismissed *all* claims or cross-claims against cross-defendant Bandasack Khamvongsa.

[3] Mem. Op. at 3 (noting that, pursuant to this court's diversity jurisdiction, the District of Columbia's substantive law applies to the present action).

[4] *See* Pls.' Opp'n at 28 (arguing that defendants' conduct "violated the national standard of care *and* even the Zei Club's own security policy") (emphasis added).

[5] Under FED. R. CIV. P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Material facts are those "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all

present a prima facie case of negligence; second, that plaintiffs were contributorily negligent;

and third, that plaintiffs assumed the risk of their injuries. The court finds that plaintiffs fail to

establish a prima facie case of negligence, under either the general or specific theories, sufficient

to survive summary judgment. The court considers each theory in turn.

## A.  General Duty of Care

In negligence cases in which the criminal acts of a third party caused a plaintiff's injuries,

District of Columbia law requires a plaintiff to show a greater duty of care by establishing that

such acts were highly foreseeable. *Id*. at 1134 ("In this context, the requisite duty of care

required for negligence is a function of foreseeability, arising only when foreseeability is alleged

commensurate with the extraordinary nature of intervening criminal conduct.") (internal editing

marks and citations omitted); *see also Clement v. Peoples Drug Store*, 634 A.2d 425, 428 (D.C.

1993); *Grasso v. Blue Bell Waffle Shop, Inc*., 164 A.2d 475, 476 (D.C. 1960).  In particular, a

business has a duty of care to protect its customers from third-party criminal activity if (1) the

business has notice of repeated criminal activity and has "every reason to expect like crimes to

happen again," and (2) the criminal activity takes place "in the portion of the premises

exclusively within [its] control" and the business has "exclusive power to take preventative

action." *Klein v. 1500 Mass. Ave. Apartment Corp*., 439 F.2d 477, 481 (D.C. Cir. 1970).

---

justifiable inferences are to be drawn in his favor." *Id.* at 255.  But the non-moving party's
opposition must consist of more than mere unsupported allegations or denials and must be
supported by affidavits or other competent evidence setting forth specific facts showing that
there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317
(1986).  The non-moving party is "required to provide evidence that would permit a reasonable
jury to find" in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C. Cir.
1987).  If the evidence is "merely colorable" or "not significantly probative," summary judgment
may be granted. *Anderson,* 477 U.S. at 249-50.

Defendants argue that, in this case, neither condition is met.  First, the Zei Club did not have exclusive control over the I Street alley.  Second, criminal activity in the I Street alley was not pervasive enough to be foreseeable and therefore did not trigger a duty to patrol the alleyway.

### 1.  Foreseeability of Criminal Activity in the Alley

Defendants argue that the history of criminal activity in the I Street alley was insufficient to make the attacks on plaintiffs foreseeable enough to give rise to a duty of care.  They maintain that before March 22, 1998, there was no history of violent activity in the I Street alley, where plaintiffs were attacked.  Defs.' Mot. for Summ. J. at 20.  Defendants point to police reports of all reported criminal activity within several blocks of the Zei Club and note that only three reported incidents occurred in or near the club from the beginning of 1997 through March 22, 1998.  In two incidents, patrons were crime victims inside the club.  *Id*. at 20 (citing generally Defs.' Ex. Q).  In the third incident, a Zei Club employee, who stood just outside the door, had a beer bottle thrown at him.  *Id*.  No magic number of crimes makes criminal activity "highly foreseeable" such that a business has a duty of care.  But if this history is complete--three documented incidents involving any Zei Club patrons or employees--defendants had no duty of care to protect patrons from criminal activity in the I Street alley.

However, it is a truism that not all criminal activity is reported to the police.  Plaintiffs contend that, despite the paucity of reported criminal activity, the Zei Club had "a rich history of violent activity both inside and outside the club."  Pls.' Opp'n at 24.  Plaintiffs make a number of factual assertions purporting to prove a high frequency of criminal activity in or near the Zei Club.  However, plaintiffs cite sources that either belie or simply do not support their assertions.

6

First, plaintiffs claim that there were "between one (1) to three (3) fights a week" at the Zei Club in the months before March 1998. Pls.' Opp'n at 24 (citing Pls.' Ex. 12 at 65 (Rob Alanis Dep.)); Pls.' Ex. 2 at 60 (Karim Dep.); Pls.' Ex. 7 at 70 (Alleyne Dep.)). Plaintiffs' sources directly refute their estimate of one to three fights per week.[6] Second, plaintiffs claim that there were "frequent fights in the . . . exact site" where plaintiffs were assaulted--the I Street alley. *See id.* (citing Pls.' Ex. 13 at 40 (Mack Dep.); Pls.' Ex. 14 at 22-23 (Ferrari Dep.); Pls.' Ex. 7 at 66 (Alleyne Dep.)). However, plaintiffs sources do not identify fights occurring in the "exact site" where plaintiffs were attacked,[7] and no source suggests that fights, in *any* alley surrounding the Zei Club, were frequent.[8] Plaintiffs claim that there were "at least two fights" in the club the night they were beaten. *See* Pls.' Opp'n at 19 (citing Pls.' Ex. 8 (Zei Club Incident Report #2, March 23, 1998)). However, the incident report reported *exactly* two--not "at least two"--

---

[6] *See* Pls.' Ex. 12 at 64-65 (Alanis Dep.) (noting the frequency of fights was "maybe 1 a month"); Pls.' Ex. 2 at 60 (Karim Dep.) (testifying that fights occurred "once every two weeks or once every three weeks"); Pls.' Ex. 7 at 70 (Alleyne Dep.) (answering plaintiffs' counsel's question, "would it be fair to say that you saw a lot more than five [fights] in the eight years that you were there in the alley?" with "I couldn't give you a number figure.").

[7] Sudra Mack stated that he had seen altercations "in the alley." Pls.' Ex. 13 at 39 (Mack Dep.). However, in the context of Mack's colloquy with counsel, "in the alley" meant *any* alley of which Mack had a view. *See id.* at 38 (statement preceding discussion of frequency of fights referred to all alleys being closed off to vehicular traffic by MPD).
Ron Ferrari stated that he had seen fights in the alleys around Zei Club but fails to identify any fights or assaults that occurred in the I Street alley. *See* Pls.' Ex. 14 at 22-23 (Ferrari Dep.). Ferrari mentioned the I Street alley once, explaining that after fights he would often separate pugilists, "sending 1 party towards the alley [and] the other towards I Street." *Id*. at 23.

[8] *See supra* note 6. In addition, Sunil Mack stated he regarded fights at Zei Club or in the alley as happening "[v]ery rarely." *See* Pls.' Ex. 13 at 40 (Mack Dep.) ("[T]he Zei Club was not a place where you would see a lot of fights"). Ron Ferrari stated that "in the alleys adjacent to Zei Club," he saw "maybe 1 or 2 fights" per month. Pls.' Ex. 14 at 22-23 (Ferrari Dep.).

incidents, including the attack on Novak and Valdivia. *See* Pls.' Ex. 8.  Finally, plaintiffs insist

that a brutal assault occurred in the I Street alley the night before they were attacked, *see id*.

(citing Pls.' Ex. 15 at 99 (Chanthaphone Test.)), without submitting support for this statement.[9]

By offering no significantly probative evidence that the Zei Club defendants had any

specific reason to anticipate fights or assaults in the I Street alley, plaintiffs fail to provide the

heightened and precise showing required to prevail in negligence cases involving intervening

criminal acts.  *See Clement*, 634 A.2d at 428 ("Because of the extraordinary nature of criminal

conduct, the law requires that the foreseeability of the risk be more precisely shown.") (internal

quotation marks and citations omitted).  Showing the mere frequency of criminal activity around

the Zei Club, without precisely providing evidence of criminal activity in the I Street alley, does

not suffice to create a duty of care.  *See Cook v. Safeway Stores*, *Inc*., 354 A.2d 507, 509 (D.C.

1976) (noting the "high incidence" of crimes throughout Washington, D.C. which pose a

"constant hazard to all lawabiding persons who use the streets and public places of business," but

finding that "it does not follow that the common law of negligence imposes an obligation upon

private enterprises to provide armed guards to insure the safety of persons invited to do business

with them."); *Ellis v. Safeway Stores*, 410 A.2d 1381, 1382 (noting that "the neighborhood in

question is in a high crime area" but that "this does not put any additional duty on grocery stores

to insure the safety of their customers against all harm.").  As a result, defendants had no general

duty of care to Zei Club patrons in the I Street alley.

---

[9] Plaintiffs did not include page 99 in Exhibit 15, which they cited in support of their statement.  *See generally* Pls.' Ex. 15 (including only pages 1, 80-88, 98 of transcript).  The pages of Chanthaphone's testimony plaintiffs did submit say nothing about a violent incident in the I Street alley, or at Zei Club, the night before plaintiffs were attacked.  *See generally id*.

**2. Exclusivity of Control of the Alley**

Defendants argue that the alley in which plaintiffs were assaulted was public, and therefore not within its exclusive control.  The court finds that there is no genuine issue of material fact as to whether the alley was in the Zei Club's exclusive control--it was not.

A business owner has a duty of care to take preventative action if it has exclusive power over the area in which criminal activity occurs.  *See Klein,* 439 F.2d at 481.  It is irrelevant that an area in dispute is public, as the I Street alley is, because a business may have exclusive control over an area without owning it.  *Cf. Cook* 354 A.2d at 509 (failing to distinguish public areas and private premises open to the public for business when noting that criminal activity is a "hazard to all lawabiding persons who use the streets and public places of business").

Plaintiffs argue that the alley in which they were attacked was in the exclusive control of the Zei Club.  There is no serious dispute that no other private business exercised control over the I Street alley.[10]  However, Zei Club did not have exclusive control over the I Street alley.  It is undisputed that a non-business entity--the MPD--did exercise considerable control over the alley.  The MPD had, for instance, the discretion to close off all the alleys surrounding the Zei Club to vehicular traffic.  *See* Pls.' Ex. 13 at 38 (Mack Dep.) (noting that starting in 1997, MPD would close all the alleys surrounding Zei Club to vehicular traffic on Friday and Saturday nights starting at 11 p.m. to midnight).  Second, on-duty MPD officers patrolled the alleys around Zei Club.  *See* Defs.' Ex. N at 78 (Alanis Dep.) (stating that MPD policed alleys around Zei Club); Defs.' Ex. O at 17 (Alleyne Dep.) (same).  MPD exercised this control because the

---

[10] The other business on the I Street alley was a parking garage, which seemed not to have any way to access the alley itself.  *See, e.g.,* Defs.' Ex. B at 81 (Valdivia Dep. July 2, 2002) (testifying that the parking garage's entrance was "on the end of the alley").

alleys were public, used not just by Zei Club patrons, but also by "people [who] just wanted to walk by." Defs.' Ex. N at 77 (Alanis Dep.); *see also* Pls.' Ex. 7 at 16-17 (Alleyne Dep.) (noting pedestrian traffic on Zei Alley). Finally, the off-duty MPD officers employed by the Zei Club were not allowed to patrol the alleys because they were already covered by on-duty MPD officers. *See* Defs.' Ex. M. at 168 (Cohn Dep.) ("[Y]ou can't patrol public alley space with . . . your own security."); D.C. Mun. Reg. 6A § 301.2 ("The following types of outside employment are prohibited in any jurisdiction:  (a) Employment for any business or in any capacity over which the [MPD] exercises a special supervisory, regulatory, or enforcement function . . . ."). As a result, the court finds that the Zei Club did not have exclusive control over the I Street alley.

In sum, plaintiffs' own evidence fails to establish a genuine issue of fact with regards to foreseeability and exclusive control, both factors needed to establish that defendants had a duty of care. *See Klein,* 439 F.2d at 481. As a result, the court grants defendants' summary judgment motion with regard to plaintiffs' general theory of negligence.

## B. Specific Duty of Care

Plaintiffs suggest an alternative theory of negligence specific to the Zei Club--that a defendant-business's failure to abide by its own security policies is sufficient to prove prima facie negligence. *See* Pls.' Opp'n at 26, 29 (citing *KLM v. Tuller*, 292 F.2d 775 (D.C. Cir. 1961); *In re Korean Air Lines Disaster*, 932 F.2d 1475 (D.C. Cir. 1991); *Saba v. Air France*, 866 F. Supp. 588 (D.D.C. 1994)). However, the cases plaintiffs cite do not support their understanding of the law--they are practically non-sequiturs. None of the cases cited involves negligence and third-party criminal activity; instead, each case involves airlines allegedly in

violation of the Warsaw Convention.[11]  Further, no case cited even suggests a categorical rule

that a business is necessarily negligent if it fails to abide by its own policies.[12]  While such a

failure indeed can be some evidence of negligence, that in itself is insufficient to show

negligence unless plaintiffs also show that non-compliance with policy was also non-compliance

with the duty of care.

In any case, as a factual matter, plaintiffs fail to show that defendants violated established

Zei Club policies.  Specifically, plaintiffs argue that the Zei Club violated two internal security

policies on March 22, 1998:  It failed to have security patrol the I Street alley, and it failed to

have security clear the alley of recently ejected patrons in order to ensure the safety of other

patrons leaving the Zei Club.

### 1.  Policy on Patrolling Alleys

Plaintiffs argue that Zei Club "policy was that off-duty, uniformed MPD officers were

assigned to the alley."  Pls.' Opp'n at 25.  This statement is simply wrong.  Plaintiffs cite several

sources to support their factual assertion, but not one suggests that Zei Club policy required off-

duty MPD officers to monitor the I Street alley.  One source plaintiffs cited flatly repudiates their

assertion, indicating that the off-duty officers were explicitly told "not to patrol the alley."  Pls.'

_____

[11] *See KLM*, 292 F.2d at 777 (alleging that liability limitations of Warsaw Convention did
not apply due to the defendant airline's "willful misconduct" in failing to notify passengers, who
later drowned, where they could find life vests in the aircraft); *In re Korean Air Lines*, 932 F.2d
at 1478 (alleging willful misconduct under the Warsaw Convention by the defendant airline for
flying 300 miles off course into Soviet airspace, knowing the aircraft to be off course and that
the Soviets would likely shoot it down); *Air France*, 866 F. Supp. at (alleging willful misconduct
by defendant airline for storing expensive carpets, shipped as cargo, outdoors during a
rainstorm).

[12] Otherwise, a business that failed to comply with its own security policy might still have
met the relevant duty of care because its policy required a much higher duty of care.

Ex. 6 at 48 (Malkin Dep.).[13]  Another source indicates that off-duty MPD officers were never

fixed in a given place, inside or outside the club.  *See* Pls.' Ex. 7 at 64 (Alleyne Dep.) ("[T]here

isn't really a . . . fixed position for them.  They were mobile. . . . [O]n occasions one would be in

and someone would be outside.  On occasions, two would be inside.  On occasions, two would

be outside.  Wherever they felt they needed to be, that's where they would go . . . .").  Yet

another source cited by plaintiffs indicates that off-duty officers stood immediately inside the

doors at closing,[14] or immediately outside the door.[15]  Finally, plaintiffs cite one source that is

entirely silent on whether Zei Club policy required off-duty MPD officers to be inside or outside

the club, let alone whether it required them to patrol the I Street alley.[16]  No source indicated that

Zei Club policy required off-duty MPD officers to stand and monitor activity in the alleys.  MPD

regulations proscribe off-duty officers from patrolling areas covered by on-duty MPD officers.

*See* D.C. Mun. Reg. 6A § 301.2(a).  As a result, the court finds that the Zei Club policy did not

require off-duty officers to monitor the I Street alley.

### 2.  Policy to Clear Alleys of Ejected Patrons

Plaintiffs also argue that, under Zei Club policy, off-duty MPD officers were "required to

---

[13] Indeed, Malkin repeatedly emphasized this fact.  *See* Pls.' Ex. 6 at 48 ("Now, let me make that clear.  They were not to patrol the alley.").  However, the off-duty officers were allowed to respond to problems in the alley once alerted to them.  *See id*.

[14] *See* Pls.' Ex. 2 at 43-44 (Karim Dep.) ("When we closed the front door, they would be inside.").

[15] *See* Pls.' Ex. 6 at 51-52 (Malkin Dep.) (indicating that off-duty officers were to "stay at the door" and were not to "hang in the club" and were to be "visible at the door").

[16] The MPD form authorizing defendant Braxton to engage in off-duty employment described his duties at the Zei Club as follows, in its entirety:  "Provide Security For Patrons Entering And Leaving Premises."  *See* Pls.' Ex. 3 (MPD Form 190 A of Michael Braxton).  The form says nothing more about Braxton's duties at the Zei Club.

stay outside at all times until all patrons safely exited premises."  Pls.' Opp'n at 25 n.14 (citing

Pls.' Ex. 6 at 48 (Malkin Dep.); Pls.' Ex. 13 at 32 (Mack Dep.); Pls.' Ex. 7 at 22-23 (Alleyne

Dep.); Pls.' Ex. 3 (PD Form 180A)).  However, yet again, the exhibits cited by plaintiff do not

support their factual assertion.  One source says that off-duty officers were to assist if they

became aware of a problem in the alleys, but they were not to patrol the alleys.[17]  Another cited

source indicates that when off-duty officers went outside, their purpose was to prevent patrons

from reentering, not to protect them from ejected patrons.[18]  Yet another cited deposition

indicates that off-duty MPD officers often cleared the alleys of people of their own accord, not

because any policy required it.[19]  Finally, one deposition plaintiffs cite indicates that ejected

patrons were shown to off-duty MPD officers, *if* they were standing outside, to ensure they

would not be readmitted; the deposition does not say that officers were required to stand outside

---

[17] Pls.' Ex. 6 at 48 (Malkin Dep.) (indicating that off-duty officers ensured the safety of patrons entering and leaving but "were not to patrol the alley"); *id*. at 49 (noting that off-duty officers were to respond to problems in the alley they could "actually see . . . from the door").

[18] Plaintiffs did not submit page 32 of the Mack deposition, which they cited.  *See generally* Pls.' Ex. 13 (including only pages 33-40).  None of the pages submitted from Mack's deposition indicates that Zei Club policy required off-duty MPD to patrol the alleys.  *See id*.  When they occupied one of Zei Club's alleys, their purpose was "to reassure [sic] no one came back in."  *Id*. at 33.  *See also* Pls.' Ex. 2 at 44 (Karim Dep.) (observing that after the front doors of the Zei Club closed, off-duty officers stood inside the club, at the back door, to ensure that patrons exited, finished their drinks, and left behind their glassware).

[19] Plaintiffs also did not submit pages 22-23 of the Alleyne deposition, which they cited to support this assertion.  *See generally* Pls.' Ex. 7 (including only pages 14-21, 30-73).  Alleyne said that the off-duty officers "took it upon themselves to keep the alleys pretty much clear of all individuals once there was an altercation," *id*. at 19-20, but never suggested that they were required to do so by the Zei Club.  *See id*.

until the ejected patrons left the alleys.  Pls.' Ex. 12 at 69 (Alanis Dep.).  In sum, the evidence

plaintiffs cite indicates that Zei Club policy did not require security employees to clear the alleys

of the unruly, ejected patrons.

As a result, the court must grant defendants motion for summary judgment with respect

to plaintiffs' specific theories of negligence involving Zei Club policy.  Because defendants

prevail on both of plaintiffs' theories of negligence, the court grants judgment in favor of

defendants.

## C.  Affirmative Defenses and Cross-Claims

Because the court has determined that plaintiffs' prima facie case for negligence does not

survive summary judgment, under either the general or specific theories presented, it is not

necessary to reach the affirmative defenses (contributory negligence, assumption of the risk)

raised by defendants.  For the same reason, it is also not necessary to reach cross-defendants'

motion for summary judgment on their cross-claims for indemnification and contribution.

## CONCLUSION

For the reasons, set forth above, the court grants defendants' motion for summary

judgment and denies cross-defendants' motion for summary judgment, joined by plaintiffs, on

defendants' cross-claims.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

Dated:  July 12, 2004

14